E-FILED on    7/13/07

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALON KONCHITSKY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL CHERTOFF, Secretary of the Department of Homeland Security; EMILIO T. GONZALEZ, Director, United States Citizenship and Immigration Services; CHRISTINE POULOS, Acting Center Director, United States Citizenship and Immigration Services; ROBERT MUELLER, Director of Federal Bureau of Investigation,<br><br>　　　　Defendants. | No. C-07-00294 RMW<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS<br><br>**[Re Docket No. 5]** |

　　Defendants move to dismiss plaintiff's complaint for writ of mandate compelling defendants to complete security checks and processing of plaintiff's application for legal permanent resident status for lack of subject matter jurisdiction or, alternatively, failure to state a claim. Defendants also move to dismiss plaintiffs Emilio Gonzalez, Director of the USCIS, Christina Poulos, Acting Director of the USCIS California Service Center, and Robert S. Mueller, Director of the FBI. Plaintiff opposes defendants' motion. The court has read the moving and responding papers and considered the arguments of counsel. For the reasons set forth below, the court GRANTS in part and DENIES in part defendants' motion to dismiss.

## I. BACKGROUND

Plaintiff Alon Konchitsky ("Konchitsky") filed a complaint for writ of mandamus requiring defendants (1) to expeditiously complete the security check on his I-485 application of adjustment of status and (2) to process his I-485 application to conclusion. He also asks the court to award him reasonable attorney's fees under the Equal Access to Justice Act ("EAJA"). Compl. ¶ 17 (Prayer). Plaintiff has sued defendants Michael Chertoff, Secretary of the Department of Homeland Security ("DHS"), Emilio T. Gonzalez, Director of United States Citizenship and Immigration Services ("USCIS"), Christine Poulos, Director of the USCIS California Service Center, and Robert S. Mueller, Director of the Federal Bureau of Investigation ("FBI") in their official capacities.

Konchitsky is a native and citizen of Israel. *Id.* ¶ 2. He seeks to become a lawful permanent resident of the United States as a beneficiary of an adjustment of status based on his classification as an alien of extraordinary ability. *Id.*

On July 9, 2003, plaintiff filed Form I-140 Immigration Petition for Alien Worker on his own behalf for classification as an alien of extraordinary ability. *Id.* ¶ 2. The I-140 Petition was approved on March 17, 2005. *Id.* On April 13, 2005, plaintiff filed Form I-485 Application to Adjust Status with the USCIS California Service Center for adjustment of status based on the approved I-140 petition. *Id.* The FBI received a request from USCIS on or about April 27, 2005 to process a security clearance on the plaintiff. Mot. at 3. According to the complaint, Konchitsky has made repeated inquiries as to the status of his application. USCIS has informed him that his adjustment application is pending name check clearance by the FBI, and this appears to be the only reason for delay. Compl. ¶¶ 10-11. Plaintiff's I-485 Application has now remained pending more than two years from the date of filing. Mot. at 3. Plaintiff complains that since his I-485 Application has not yet been processed, he must apply and pay for extensions of employment authorization and travel documents each year, wait over three months for issuance of travel documents, he has been deterred from seeking financing for the purchase of a home, and has lost time in status as a permanent resident required to become eligible to apply for U.S. citizenship. Compl. ¶ 15.

## II.  ANALYSIS

### A.    Legal Standard

Plaintiff bases subject matter jurisdiction in this case on federal question jurisdiction, 28 U.S.C. § 1331; the Mandamus Act, 28 U.S.C. § 1361; and the Administrative Procedures Act (APA), 5 U.S.C. § 701 *et seq*.  Under 28 U.S.C. § 1361, court may issue a writ of mandamus "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  However, "[m]andamus writs, as extraordinary remedies, are appropriate only when a federal officer, employee, or agency owes a nondiscretionary duty to the plaintiff that is so plainly prescribed as to be free from doubt.  *Stang v. I.R.S.*, 788 F.2d 564, 565 (9th Cir. 1986) (citation and internal quotation marks omitted).  "[O]nly exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion will justify the invocation of this extraordinary remedy."  *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 380 (2004) (internal quotation marks and citations omitted).  A plaintiff must show (1) his claim is "clear and certain"; (2) the official's duty to act is ministerial, and "so plainly prescribed as to be free from doubt"; and (3) no other adequate remedy is available.  *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994) (quoting *Fallini v. Hodel*, 783 F.2d 1343, 1345 (9th Cir. 1986)).

Under the APA, "[t]o the extent necessary to decision and when presented, the reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  Further, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."  5 U.S.C. § 555(b).  "[W]hen an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be."  *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 65 (2004).  To invoke the APA, plaintiffs must show that (1) the agency had a nondiscretionary duty to act, and (2) the agency unreasonably delayed in acting on that duty.  *Gelfer v. Chertoff*, 2007 WL 902382, *1 (N.D. Cal. 2007) (Alsup, J.) (citing *Norton*, 542 U.S. at 63-65; 5 U.S.C. §§ 555(b), 701(a)(2)).

### B. Clear and Certain Claim

"Where the duty in a particular situation is so plainly prescribed as to be free from doubt and equivalent to a positive command, it is regarded as being so far ministerial that its performance may be compelled by mandamus." *Wilbur v. United States*, 281 U.S. 206, 218-19 (1930). 8 U.S.C. § 1255(a) outlines the adjustment process for aliens lawfully admitted for permanent residence:

> [t]he status of an alien . . . may be adjusted by the Attorney General, in his discretion . . . if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

The government has conceded in *Gelfer* that it has a duty to *process* I-485 applications under 8 U.S.C. § 1255(a). 2007 WL 902382 at *2. 8 C.F.R. § 245.2 sets forth the applicant's right to "be notified of the decision of the director, and, if the application is denied, the reasons for the denial." Thus, it cannot be disputed that plaintiff, who has complied with the requirements for eligibility under the statute, has a clear claim that his I-485 application be processed by defendants. Further, as discussed in section B, *infra*, defendants' delay without explanation is unreasonable as a matter of law.

### C. Ministerial Duty to Act

Defendants argue that plaintiff impermissibly requests this court to compel discretionary agency action. In the context of a writ of mandate, "§ 706(1) empowers a court only to compel an agency to perform a ministerial or non-discretionary act, or to take action upon a matter, without directing how it shall act." *Norton*, 542 U.S. at 64 (citing the Attorney General's Manual on the Administrative Procedure Act 108 (1947)). However, here the relevant duty is whether plaintiff has a clear right to have his I-485 application processed as set forth in the APA.

#### 1. Nondiscretionary Duty

Defendants have a nondiscretionary duty to process plaintiff's application. In *Singh* and *Gelfer*, the government conceded it had a *nondiscretionary duty* to process the plaintiff's I-485 applications under 8 U.S.C. § 1255(a). *Gelfer*, 2007 WL 902382 at *2; *Singh v. Still*, 470 F. Supp. 2d 1064, 1067 (N.D. Cal. 2006) (Chen, M.J.). As the *Gelfer* court explained, there is a difference

between the agency's discretion over *how to* resolve an application and its discretion as to *whether to* resolve an application. *Gelfer*, 2007 WL 902382 at *2 (citing *Singh*, 470 F. Supp. 2d at 1067.); *see also Yu v. Brown*, 36 F. Supp. 2d 922, 931 (D.N.M. 1999). Thus, defendants have a nondiscretionary duty to act upon plaintiff's I-485 application and plaintiff has a right to have his application processed. *See Yu*, 36 F. Supp. 2d at 925 ("Administrative agencies do not possess the discretion to avoid discharging the duties that Congress intended them to perform.") (citation and internal quotation marks omitted).

Defendants cite 8 U.S.C. § 1252(a)(2)(B)(ii), which, as amended by the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (2005) ("REAL ID Act"), on May 11, 2005, provides that "[n]otwithstanding any other provision of law . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review" any discretionary action by the Attorney General or the Secretary of Homeland Security other than the granting of asylum under section 208(a) of the INA, 8 U.S.C. § 1158(a). However, § 1252(a)(2)(B) is entitled "Denials of discretionary relief", and therefore does not apply to plaintiff's situation, as he has neither been granted nor denied relief, but rather defendants have simply failed to make a decision. *See Paunescu v. I.N.S.*, 76 F. Supp. 2d 896, 900 (N.D. Ill. 1999). Further, even assuming § 1252(a)(2)(B)(ii) applies here, because the court has determined that defendants have a non-discretionary duty to process plaintiff's I-485 application, the court's lack of jurisdiction to review discretionary actions of the Secretary of Homeland Security would not be implicated.

### 2.  Unreasonable Delay

The second question is whether the now more than two year delay in processing plaintiff's I-485 application is unreasonable. Defendants argue that plaintiff has no right or entitlement to have his application processed immediately or within any particular time frame. While it is true that no specific timeline applies to processing of I-485 applications, *see* Decl. of Gerald McMahon Supp. Defs.' Mot. Dismiss ("McMahon Decl.") ¶ 13, defendants clearly have to process the applications without unreasonable delay. *See* 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each

agency shall proceed to conclude a matter presented to it."); 5 U.S.C. § 706.  As the *Yu* court reasoned, "[a]lthough neither statute specifies a time by which an adjudication should be made, we believe that by necessary implication the adjudication must occur within a reasonable time.  A contrary position would permit the INS to delay indefinitely.  Congress could not have intended to authorize potentially interminable delays."  36 F. Supp. 2d at 932.

"What constitutes unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." *Gelfer*, 2007 WL 902382 at *2 (quoting *Yu*, 36 F. Supp. 2d at 932).  Here, plaintiff filed his I-485 application on April 13, 2005.  Plaintiff has inquired as to the continued delay in processing his application and has been told only that the application is pending security clearance by the FBI.  Compl. ¶ 10.  According to USCIS, plaintiff's application will be adjudicated once the required security checks are completed.  *Id.*; McMahon Decl. ¶ 14.  The FBI processes name check requests from the USCIS chronologically based on the request date, and certain applications that are qualified for expedited review are moved up in the queue.  McMahon Decl. ¶ 13.

Although Congress has not established a mandatory time frame for the USCIS to complete the adjudication, Congress sets a normative expectation in "The Immigration Services and Infrastructure Improvements Act of 2000" of a reasonable processing time for an immigrant benefit application as no more than 180 days after initial application.  8 U.S.C. § 1571 ("It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application . . .").  Additionally, defendants concede that "[f]or most applicants, USCIS can quickly determine if there are criminal or security related issues in the applicant's background that affect eligibility for immigration benefits."  McMahon Decl. ¶ 10.  The USCIS website indicates that as of May 18, 2007, it was currently processing employment-based applications for adjustment received on November 13, 2006, one and a half years after it apparently received plaintiff's application.  "Processing Times Report," Opp'n, Ex. 4 at 2.

Delays, including lengthy ones, may be warranted because USCIS must await responses from the FBI or other agencies or because additional investigation is needed.  McMahon Decl. ¶ 10.  In

particular, FBI checks include (1) a name check, (2) a fingerprint check for past criminal background within the United States, and (3) an Interagency Border Inspection System ("IBIS") database query. *Id.* ¶ 4. Initial responses for name checks generally take about two weeks. Fact Sheet, *id.*, Ex. 1 at 2 (hereinafter "Fact Sheet").[1] In about 80 percent of cases, no matches are found. Fact Sheet at 2. Of the remaining 20 percent, less than one percent remain pending after six months. *Id.* Some cases "involve complex or highly sensitive information and cannot be resolved quickly." McMahon Decl. ¶ 4. Results of fingerprint checks are usually received within days (24-48 hours) and the vast majority of checks result in no criminal record. Fact Sheet at 2. Approximately 10 percent of fingerprint checks uncover criminal history, which may require additional information from the applicant. *Id.* Results of IBIS queries are "usually available immediately," but "in some cases information found will require further investigation." *Id.* Delays are caused when the USCIS is awaiting a background check response from the FBI or another agency, or if the response requires additional review by the USCIS or another agency. *Id.* In some cases, applications may take months or several years to resolve. *Id.* at 2-3.

Although the average times for processing applications and, in particular, FBI security checks, are not a *per se* measure of reasonableness of processing time, they offer a good indicator of whether a delay is reasonable. According to defendants' Fact Sheet, in most cases FBI background checks are processed fairly quickly. *Id.* at 2. Here, defendants state that Konchitsky's application is pending completion of the background check process. McMahon Decl. at 14; *see also* Opp'n, Ex. 2 at 1 ("A check of our records establishes that your case is not yet ready for decision, as the required investigation into your background remains open."). This fails to explain why plaintiff's application has not been processed for more than two years, far beyond the 180 days recommended by Congress. *See* 8 U.S.C. § 1571. As in *Gelfer*, defendants do not point to a single action that has been taken to further plaintiff's particular application or a reason why plaintiff's application requires such an extended delay. 2007 WL 902382 at *2. Although defendants assert that the delay results

---

[1] Defendants failed to attach the Fact Sheet as Exhibit 1 to the McMahon Declaration. The court assumes the fact sheet referenced in the Declaration is the same fact sheet dated April 25, 2006 submitted in similar cases pending before this court.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS—No. C-07-00294 RMW AEL
7

from "increased national security issues and not agency inaction," defendants have not shown how national security concerns are a reason for the delay in *plaintiff's* application. Resp. at 4. As the *Singh* court reasoned, "mere invocation of national security is not enough to render agency delay reasonable per se." 2007 WL 289817, at *5. Furthermore, *Yu* held that, "[D]elays of a significant magnitude, particularly when they occur over uncomplicated matters of great importance to the individuals involved, may not be justified merely by assertions of overwork." *Yu*, 36 F. Supp. 2d at 934 (citations omitted). Also, USCIS cannot shift responsibility for its breach of duty to the FBI, as USCIS has contracted out the task of completing security and background checks to the FBI, and has the ability to expedite requests. *Paunescu*, 76 F. Supp. 2d at 903 n.2; McMahon Decl**.** ¶ 11.

Under these facts, and without a particularized explanation for the delay, the court finds the more than two year delay of plaintiff's application unreasonable as a matter of law. *See Gelfer*, 2007 WL 902382 at *3 (holding that a more than two year delay in processing I-485 application unreasonable as a matter of law); *Yu*, 36 F. Supp. 2d at 932 (holding that a two and a half year delay in processing a lawful permanent resident status application is on its face an unreasonable amount of time to process a routine application and requires an explanation).

### D.     No Other Adequate Remedy

In a petition for writ of mandate, plaintiff must show that no other adequate remedy exists. This is "a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process." *Cheney*, 542 U.S. at 381. Here, plaintiff alleges that he has exhausted all administrative remedies and defendants do not dispute that plaintiff has done so. Thus, the court finds that plaintiff has no adequate alternative remedy other than to seek judicial relief in the form of a writ of mandate.

### E.     Jurisdiction over USCIS and FBI

Finally, defendants argue that even assuming the court has jurisdiction over plaintiff's complaint, this court nevertheless lacks jurisdiction to compel USCIS to adjudicate his application and the FBI to perform name checks under the APA. Defendants argue that the only defendant should be Michael Chertoff of the Department of Homeland Security ("DHS"), as the DHS is the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS—No. C-07-00294 RMW AEL                                                          8

agency responsible since March 1, 2003 for implementing the Immigration and Nationality Act ("INA"). Resp. at 1-2.

As set forth in 6 U.S.C. § 271(b), 557, the USCIS is a division of the DHS. Thus, this court has jurisdiction to require USCIS to process Konchitsky's application within a reasonable amount of time, as set forth above. Courts have found it appropriate to compel *USCIS* to expeditiously process applications that are delayed due to a pending name check. *See, e.g.*, *Alhamedi v. Gonzales*, 2007 WL 1573935 at *4 (S.D.N.Y. 2007) (rejecting USCIS's arguments that "it cannot act until the FBI completes its name check, and it has no power to force the FBI to expedite Alhamedi's case" and remanding to USCIS with instructions that the FBI expedite his name check); *Song v. Klapakas*, 2007 WL 1101283 at *5 (E.D. Pa. 2007) (ordering USCIS to adjudicate plaintiffs' I-485 applications within thirty days); *but s*ee *Dmitriev v. Chertoff*, 2007 WL 1319533 at *2 n.1 (N.D. Cal. 2007) (Ware, J.) (dismissing USCIS as a defendant from a similar complaint).

However, courts squarely addressing the issue of whether they have jurisdiction to compel the FBI to perform name checks in connection with adjustment of status petitions have overwhelmingly concluded that they do not. *See e.g., Dmitriev*, 2007 WL 1319533. First, there are no statutes or regulations establishing a nondiscretionary duty on the part of the FBI to process name checks for adjustment of status applications. *See, e.g.*, *Shalabi v. Gonzales*, 2007 WL 3032413 at *6 (E.D. Mo. 2006) ("[Plaintiff] cannot establish that the FBI owes him 'a clear nondiscretionary duty.'"); *Sozanski v. Chertoff*, 2006 WL 4516968 (N.D. Tex. 2006) (holding the court did not have jurisdiction to order defendants to perform the FBI name check); *Zaytsev v. Gantner*, 2004 WL 2251665, at *1 (S.D.N.Y. 2004); *but see Kaplan v. Chertoff*, 481 F. Supp. 2d 370, 400 (E.D. Pa. 2007) (finding the FBI had a nondiscretionary duty to process name checks based on a reading of several congressional enactments). Second, the FBI's involvement in adjudicating I-485 applications arises not by statute or duty otherwise imposed by law, but by contract between USCIS and the FBI. *See* Decl. of Michael A. Cannon Supp. Defs.' Mot. Dismiss ("Cannon Decl.") ¶ 21.

The court concludes that, while this court has jurisdiction over USCIS with regard to Konchitsky's I-485 application, there is no similar basis for this court to mandate action by the FBI.

Thus, the court denies defendants' motion to dismiss defendants Emilio Gonzalez, Director of the USCIS, and Christina Poulos, Acting Director of the USCIS California Service Center, and grants defendants' motion to dismiss defendant Robert S. Mueller, Director of the FBI.

### III.  ORDER

For the foregoing reasons, the court GRANTS in part and DENIES in part Defendants' Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim.  The court DISMISSES Defendant Robert S. Mueller, III, Director of Federal Bureau of Investigations from the case.  The parties shall appear on September 14, 2007 at 9:00 a.m. for hearing on cross-motions for summary judgment, which shall be briefed pursuant to Local Rule 7-2.

DATED:     7/10/07

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiffs:**
Judith Michaels Morrow        judithmorrow@pacbell.net

**Counsel for Defendants:**
Ila Casy Deiss         ila.deiss@usdoj.gov

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**     7/13/07                                                    /s/ MAG
                                                                 **Chambers of Judge Whyte**